[No. B018331. Second Dist., Div. Two. Apr. 1, 1987.]

LORETTA DIANE NULPH et al., Plaintiffs and Appellants, v. FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver, etc., Defendant and Respondent.

**COUNSEL**

Sheryll Layne Myrdall for Plaintiffs and Appellants.

Whitman & Ransom, Michael J. Maloney, David T. Miyamoto and Merrill J. Baumann, Jr., for Defendant and Respondent.

**OPINION**

**FUKUTO, J.**—Plaintiffs appeal from the trial court's grant of summary judgment on behalf of the Federal Deposit Insurance Corporation (FDIC), as receiver for West Coast Bank. We reverse.

The sole issue in this case is whether appellants' failure to file a creditor's claim bars them from continuing their action against West Coast Bank filed prior to the bank's failure and the FDIC's acceptance of receivership.

On March 17, 1982, appellants filed a verified complaint against West Coast Bank, and a verified first amended complaint on April 20, 1983, alleging fraud, conspiracy and negligence and seeking recission and cancellation of a deed of trust. On July 1, 1983, West Coast Bank filed its verified answer to the first amended complaint.

On April 27, 1984, over two years after the filing of the original complaint, the superintendent of banks for the State of California closed West Coast Bank and took possession of the bank's property and business pursuant to its statutory authority. On the same date, the FDIC accepted receivership.

On May 4, 1984, the FDIC published a notice to creditors of the bank, pursuant to Financial Code section 3117, calling on all persons with claims against the bank to present them to the receiver within four months of the date the notice was first published. Appellants admit they did not file a claim in response to the published notice.

On February 5, 1985, the FDIC substituted into the action in the place of West Coast Bank as the real party in interest. On August 30, 1985, approxi-

mately three and one-half years after appellants first filed suit and some one and one-half years after the FDIC accepted receivership, the FDIC filed this motion for summary judgment. The lower court granted respondent's motion predicated solely upon the fact that "[p]laintiff[s] failed to file the required claim pursuant to Financial Code 3118."

Appellants contend on appeal that the action is not barred because they substantially complied with the claims filing requirements; that the FDIC is estopped to assert the bar and, for the first time, appellants assert that because they have always been in a "defensive posture," they are not "creditors" and, thus, were not required to file a claim. We need not consider these contentions since we are of the opinion that Financial Code section 3118 does not apply to the facts in the present case.

Financial Code section 3118 provides: "All claims of every kind against the bank or against any property owned or held by such bank shall be presented to the superintendent in writing verified by the claimant or someone in his behalf within four months of the date of the first publication of the notice to creditors. Any claim, . . . not so presented within said four months' period shall be forever barred. . . ."

Section 3118 was enacted as part of a comprehensive scheme for the orderly and efficient distribution of the assets of an insolvent bank. (*In re Yokohama Specie Bank* (1948) 86 Cal.App.2d 545, 551 [195 P.2d 555].)[1]

Respondent FDIC relies upon *In re Yokohama Specie Bank, supra,* 86 Cal.App.2d 545, in asserting that appellants' failure to file a creditor's claim bars recovery even where the lawsuit has been instituted prior to the closure of the bank. Such reliance is misplaced.

In *Yokohama,* the FDIC accepted receivership of a Japanese bank immediately after the outbreak of the war with Japan in December 1941. Some six years later, the liquidator filed a petition for distribution of dividends

---

[1]In sections 3100 through 3240 of the Financial Code, California has established a comprehensive procedure for the distribution of assets in bank liquidations. In 1909, in response to the failure of the California Safe Deposit and Trust, our Legislature enacted the first bill to be known as the "Bank Act." In 1913, certain provisions concerning the superintendent of bank's duties with regard to banks under its possession for reorganization or liquidation were added to the act. The 1909 Act provided claims could be made up to six months from the last date of publication of the notice regarding claims. In 1913, the time period was reduced and claims were required to be made before the last date of publication. In 1929, the act was again amended and the essence of present Financial Code section 3118 was added at that time. A review of legislative history materials discloses no discussion of the issue of whether a claim is required to be filed where a lawsuit is pending at the time of the bank's closure.

on approved claims. One day prior to the date of the hearing on the petition, certain creditors filed a petition to intervene in the liquidator's petition for distribution. In that factual context, the court held that the creditors' petition did not state a cause of action because the filing of a claim established a condition precedent operating as a prohibition against assertion of the right to intervene. The court analogized the Financial Code claims filing provisions to public entity and probate claims filing statutes. ". . . it is at one with those statutes calling for filing a claim against an estate in probate, a county or other public agency. In cases involving those statutes it has been uniformly held that the pleading fails to state a cause of action unless it alleges presentation of a claim within the time fixed in the statute or a valid excuse for failure of presentation. . . ." (*In re Yokohama Specie Bank, supra,* 86 Cal.App.2d at p. 553.)

In general, no suit for money or damages may be maintained against a governmental entity unless a formal claim has been presented to such entity and has been rejected. (Gov. Code, §§ 912.4, 945.4.) ▮ Compliance with the claim requirement must be affirmatively pleaded in the complaint and proved at trial. Absent such pleading and proof, the plaintiff's action is subject to dismissal. (*Redlands etc. Sch. Dist.* v. *Superior Court* (1942) 20 Cal.2d 348, 358 [125 P.2d 490].)

▮ In the case at bar, there was no claims filing requirement to be met by appellants at the time the suit was filed. The bank's closure did not occur until some two years after the filing of the original complaint, one year after the filing of the first amended complaint and nine months after the bank filed its verified answer. Therefore, appellants were not required to allege, nor could they have alleged, in either the original or first amended complaint, compliance with any claims filing statute. The duty to file a claim arose, if at all, after the filing of the complaint and upon the publication by the FDIC of the notice to creditors calling for the presentation of claims.

Financial Code section 3118 is more closely analogous to Probate Code section 707, which provides that all persons having claims against a decedent must file such claims within four months after publication of the notice to creditors or be forever barred from asserting their claims. ▮ Section 707 " '. . . is intended to insure that the executor or administrator of an estate will be notified within a reasonable period of time of all claims so that the estate may be expeditiously settled and distributed to the legatees or heirs. [Citations.] In addition, it provides an opportunity for amicable disposition of a claim *prior to the commencement of any action* and thus protects the estate from the expense of needless litigation. . . .' " (*Wood* v. *Brown* (1974) 39 Cal.App.3d 232, 237 [114 Cal.Rptr. 63], italics added.)

The language of Probate Code section 707 is similar to that of Financial Code section 3118; however, neither specifically addresses the issue of the pending lawsuit. In recognition of this problem, the drafters of the Probate Code enacted section 709 which provides, "If an action is pending against the decedent at the time of his or her death, the plaintiff shall . . . file his or her claim with the clerk or present it to the executor or administrator for allowance or rejection, authenticated as required in other cases. No recovery shall be allowed against decedent's estate in the action unless proof is made of the filing or presentation."

Despite the fact that no similar provision has been added to the Financial Code, respondent argues that the statute must be literally construed. Respondent contends that the language of Financial Code section 3118 is plain; that it requires all creditors to file a claim, even where the bank has actual notice of the claim based upon a verified complaint, filed, served, answered, and defended against prior to the bank's closure. In our opinion, such an interpretation would be unjust, especially in the absence of language such as that contained within the Probate Code, which specifically advises the claimant of the necessity for filing a claim where a lawsuit is pending, and directs the court as to the consequences of the failure to file such a claim.

■ It is a well-established principle of statutory interpretation that the law favors rational and sensible construction. And, it is fundamental that departure from the literal construction of a statute is justified when such a construction would produce an unjust result and would clearly be inconsistent with the purposes and policies of the act in question. (*Stanley* v. *Justice Court* (1976) 55 Cal.App.3d 244 [127 Cal.Rptr. 532].)

■ The statutory provisions governing the liquidation and reorganization of insolvent banks are directed toward the proper and orderly liquidation of the insolvent bank. The liquidating officer has a duty to collect and protect the assets of the insolvent bank and to pay out against or compromise claims. The ultimate purpose of this process is the distribution of assets to the depositors and creditors of the insolvent bank. In this respect, the purpose of the Financial Code is similar to that of the Probate Code. Each is concerned with the necessity for winding up the affairs of the estate or the insolvent bank within the shortest time possible and to distribute the assets to bona fide claimants. ■ However, while the overall policy considerations are similar, there are fundamental differences between the winding up of an estate and the winding up of a corporation such as West Coast Bank. This is especially true as the winding-up process relates to lawsuits pending at the time of the bank's closure.

An individual has no legal obligation to maintain books, files or other records, nor is an individual obligated to respond to a complaint filed against

him. Thus, it is possible for an individual to die without leaving evidence of a pending suit. In recognition of this possibility, Probate Code section 709 was enacted requiring those with suits pending against the decedent at the time of death to file a creditor's claim, thus providing the executor with a complete list of claims prior to the distribution of the estate.

By contrast, banking corporations have a legal obligation to maintain certain records, are subject to regulation by government agencies, and to periodic audits and examinations. (Fin. Code, § 1900 et seq.) Unlike the individual, a bank is vulnerable to suit by shareholders and subject to imposition of penalties should it fail to maintain accurate records of its financial condition. (Fin. Code, § 3353.) At a minimum, a bank would be required to accept service of process, note in its records that a suit has been filed and turn the matter over to counsel for defense.

 Upon taking possession of an insolvent bank, the superintendent is required to determine the assets and liabilities of the bank. (Fin. Code, § 3100 et seq.) Inherent in this requirement is the responsibility to review the bank's records and books, to conduct an audit and inventory and to consult with legal counsel retained by the bank to defend suits filed against the bank. Even a cursory search should produce evidence of a verified complaint asserting the invalidity of a deed of trust and alleging fraudulent acts on the part of a bank officer.

The primary purpose of the Financial Code provisions concerning liquidation is to insure that the assets are distributed to bona fide creditors. The purpose behind the claims filing requirement is to insure that the bank has an accurate list of claims asserted against the bank's assets. It would be inconsistent with these policies to require appellants to file a claim under the facts of this case.

The judgment is reversed. Appellants to recover costs on appeal.

Roth, P. J., and Gates, J., concurred.